ROBERT A. GURR (State Bar No. 13722)
JARED G. BRANDE (State Bar No. 11514)
GURR BRANDE & SPENDLOVE, PLLC
491 E. Riverside Dr., 4B
St. George, UT 84790
Telephone: 435-634-8889
Facsimile: 866-232-8818
rob@gurrbrande.com
jared@gurrbrande.com

*Attorneys for Plaintiff*
David Clay

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

---

| | |
|---|---|
| DAVID CLAY, an individual,      )<br>     )<br>     )<br>     Plaintiff,    )<br>     )<br>     v.     )<br>     )<br>GREGORY D. McLAUGHLIN aka Kyle )<br>McLaughlin, an individual, CASEY )<br>McLAUGHLIN, an individual, JOHN AND )<br>JANE DOES I-XX, JOHN DOE  )<br>CORPORATIONS I-X, and OTHER JOHN )<br>DOE ENTITIES I-X,   )<br>     )<br>     Defendants.  ) | **COMPLAINT**<br><br><br><br>Case No.: 4:18-cv-00064-DN<br>Judge David Nuffer |

## **COMPLAINT**

Plaintiff David Clay ("Clay") files this Complaint against Defendants Gregory D. McLaughlin, aka Kyle McLaughlin, ("Gregory") and Casey McLaughlin ("Casey"), and alleges as follows:

## **THE PARTIES**

1.     Clay is an individual and resident of the State of Utah.

2.     Gregory is an individual and, upon information and belief, currently resides in Russia.  Gregory uses the alias "Kyle McLaughlin."

3.     Casey is an individual and, upon information and belief, is a resident of the State of Utah.

4.     Upon information and belief, Defendants John and Jane Does I through XX are individuals whose names and addresses of residences are unknown.

5.     Upon information and belief, Defendants John Doe Corporations I through X are corporations, the names and addresses of residences of which are unknown.

6.     Upon information and belief, Defendants Other John Doe Entities I through X are other legal entities, the names and addresses of residences of which are unknown.

7.     The above-captioned Defendants are collectively referred to as "Defendants" herein.

## JURISDICTION AND VENUE

8.     This action arises, in part, under the Lanham, 15 U.S.C. § 1051 et seq.  This Court has original jurisdiction over this controversy pursuant to 15 U.S. Code § 1121 and 28 U.S.C. §§ 1331 and 1338.  Additionally, this Court has supplemental jurisdiction over the state claims in this controversy pursuant to 28 U.S. Code § 1367

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(a).

10.     This Court has personal jurisdiction over the Defendants.  Gregory was previously a resident of the State of Utah immediately before relocating to Russia. Casey is a resident of the State of Utah.   In addition, the Defendants regularly and continuously do

business in this District and the events giving rise to this action occurred in this District. Further, this Court has personal jurisdiction over the Defendants because minimum contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## **FACTUAL BACKGROUND**

11.     In or around 2009, Clay became aware of the Starving Student Card (the "Card") while attending Utah Valley University ("UVU").

12.     The Card is a coupon book that consumers can purchase which entitles the consumer to discounted or free merchandise or services.

13.     The Card is typically sold by secondary and post-secondary students, or school organizations, as a method of fundraising.

14.     The Card is typically valid for one year, expiring on the last day of August.

15.     The Card has been sold in Utah and Nevada.

16.     Gregory was the owner of multiple businesses related to the Card, including Starving Student Card Inc. and Starving Student Fundraising, Inc.  These businesses are currently in "expired" status with the Utah Division of Corporations and Commercial Code.

17.     On January 23, 2003, Starving Student Fundraising, Inc. filed an application for the trademark "Starving Student Card" with the United States Patent and Trademark Office ("USPTO").

18.     On August 31, 2004, Starving Student Card was registered as a trademark with the USPTO (Registration No. 2878475, hereafter referred to as the "Trademark").

19.     On August 6, 2010, Starving Student Fundraising, Inc. executed an assignment which assigned "the entire interest and the goodwill" of the Trademark to Gregory, which was recorded with the USPTO on August 9, 2010.

20.     In or around 2010, Clay purchased from Gregory the Southern Utah region for the sales of the Card.

21.      In or around 2015, Gregory began working on a new software application, which was eventually named "SmartSavers.club" (hereafter referred to as the "App").

22.     Gregory touted that the App would eventually replace the Card in its physical form.

23.     Gregory requested that Clay inform the businesses that Clay was negotiating with who would provide the offers on the Card that the App would be available in 2016.

24.     Pursuant to these instructions, Clay promoted the App to the businesses with which he negotiated.

25.     Gregory agreed to pay Clay a commission from the sales of the App in exchange for Clay's promotion of the App and uploading deals from his business contacts to the App.

26.     Despite Gregory's representations, the App was not finished for the 2016-2017 season.

27.     In furtherance of Gregory's goal to have the App replace the physical version of the Card, he contracted with a call center to solicit businesses to place offers in the App.

28.     Eventually, Gregory finished development of the App.

29.     In November 2016, Gregory informed Clay that he intended to sell the rights associated with the Card.

30.     Clay offered Gregory $10,000.00 for the worldwide rights associated with the Card, the URL www.starvingstudentcard.com (the "URL"), the Trademark, merchant lists for areas where the Card had been sold, and contact information for bookstore directors (collectively referred to as the "Purchased Assets").

31.      On November 29, 2016, Gregory executed a notarized agreement (the "Agreement") where he acknowledge that he agreed to transfer the Purchased Assets to Clay and would take the action necessary to effectuate the transfer.

32.     Gregory drafted the Agreement and delivered a signed copy to Clay.

33.     In the Agreement, Gregory also acknowledged that he received the $10,000.00 from Clay on November 14, 2016, which "complet[ed] the purchase of the [Card]."

34.     In the Agreement, Gregory also wrote that he was interested in working with Clay in connection with the Card in Utah County in exchange for a commission for the former's sales.

35.     Clay agreed to allow Gregory to continue selling the Card in the Provo/Orem area and provided the latter with 6,000 copies of the Card.  Clay agreed to a commission split of 10% to him and 90% to Gregory for the latter's sales of the Card in Provo/Orem.

36.     Prior to Clay agreeing to the 90-10 split, Gregory held hostage the GoDaddy® username and password necessary to effectuate the transfer of the URL.  Only after the commission agreement did Gregory finally provide the username and password to Clay.

37.     Clay asked his web designer to use the credentials to transfer the URL to Clay.

38.     After Gregory signed the Agreement and Clay paid Gregory $10,000.00, Clay made multiple requests to Gregory to assign the Trademark to Clay.  Despite making several

promises to effectuate the assignment, Gregory never assigned the Trademark to Clay, in violation of the terms of the Agreement.

39.     In July 2017, Clay uploaded to the App several offers from businesses with which had negotiated.  These offers uploaded by Clay constituted around 80-90% of all the offers that had been uploaded to the App.

40.     These businesses were located in St. George, Cedar City, Hurricane, Provo, Orem, Salt Lake City, and Mesquite, Nevada.

41.     Around that same time, Gregory began making sales of the Card and App on the campuses of Brigham Young University ("BYU") and UVU.

42.     Between September 2017 and December 2017, Clay requested that multiple times that Gregory provide an accounting for the sales of the Card that Gregory made in Provo/Orem.

43.     Gregory never provided the accounting and never paid Clay any of the funds for his sales of the Card in Provo/Orem, nor did he pay Clay any of the agreed upon commissions on the sales of the App.

44.     In December 2017, Clay learned that Gregory had "left town" in early November of that year and possibly moved out of the country.

45.     In January 2018, Gregory did not show up to make sales of the Card or the App on the campuses of BYU or UVU.

46.     Instead, Gregory sent others to make sales.

47.     Neither Gregory nor his representatives have sent Clay any portions of their sales of the Card.

48.     In April 2018, after having no contact with Gregory for several months, Clay began working on preparing the 2018-2019 version of the Card for sale.

49.     In August 2018, Clay discovers that his web designer had not actually transferred the URL to Clay when he had access to Gregory's GoDaddy® account.

50.     Upon making this discovery, Clay emailed Gregory requesting that the latter transfer the URL to the former.  Gregory refused to transfer the URL.

51.     After Clay informed Gregory that the URL had not actually been transferred, Gregory linked his Square® account to the URL and began selling old versions of the Card through the URL and collecting funds from those sales through his Square® account.

52.     These old versions of the Card which Gregory began selling contain a stamp instructing consumers to trade the old card in for a new card on campus.

53.     Using the URL, Gregory also posted online an option for consumers to purchase a lifetime membership to the App and receive a free version of the Card for life.



54.     Gregory or other Defendants haves also contacted individuals at BYU and UVU and encouraged them to stop selling the Card.

55.     Upon information and belief, Defendant Casey McLaughlin ("Casey") is Gregory's son.

56.     Upon information and belief, Casey has been cooperating with Gregory since January 2018, and perhaps before, in negotiating and selling the Card.

57.     Without Clay's permission or consent, Defendants requested that Seagull Printing produce counterfeit versions of the 2018-19 version of the Card.  Seagull Printing refused.

58.     Defendants produced a counterfeit, digital version of the Card for the 2018-19 season and presented to McNeil Printing in Utah County.  At Defendants' request, McNeil Printing to produce 10,000 counterfeit copies of the Card for sale at BYU and in Utah and Salt Lake Counties.

59.     Defendants are selling the counterfeit copies of the Card, which bear the Trademark.



1
2
3
4
5
6
7
8
9
10
11



12
13
14
15

60.     When a user types in the URL, he is redirected to

https://squareup.com/store/starvingstudentcard, which is controlled by Defendants and includes

multiple references to the Trademark.

16
17
18
19
20
21
22
23



24
25
26
27
28



61.     Defendants have contacted third parties who have (1) previously purchased the Card or (2) with whom Clay and his representatives have had a business relationship and conveyed to these third parties that Clay and his representatives no longer involved with the Card and that all sales should through Defendants.

62.     Defendants have also contacted third parties and accused Clay and his representatives of committing fraud.

## FIRST CAUSE OF ACTION
### (Federal Trademark Infringement-15 U.S.C. 1114)

63.     Clay alleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above, as though fully set forth herein.

64.     Clay is the rightful owner of the Trademark.

65.     The Agreement has been recorded with the USPTO and it has transferred ownership of the Trademark to Clay.

66.     Defendants are using the Trademark in connection with their sales of counterfeit versions of the Card.

67.     Defendants do not have Clay's permission to use the Trademark.

68.     Defendants' use of the Trademark is a violation of 15 U.S.C. 1114(1)(a) in that the Defendants have, without the consent of Clay, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the Trademark in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Defendants. Defendants have used the imitation in such a manner as is likely to cause confusion, mistake, or deceive.

69.     Defendants' use of the Trademark is a violation of 15 U.S.C. 1114(1)(b) in that the Defendants have, without Clay's consent, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the Trademark and applied such reproduction, counterfeit, copy, or colorable imitation to advertisements intended to be used in commerce in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Defendants. Defendants have used the imitation in such a manner as is likely to cause confusion, mistake, or deceive.

70.     Defendants' use of an imitation of the Trademark is committed with knowledge that the imitation was intended to be used to cause confusion, mistake, or to deceive.

71.     Clay is entitled to injunctive relief under 15 U.S.C. 1116 and recovery of damages from Defendants jointly and severally pursuant to 15 U.S.C. 1117. Damages recoverable are three times the actual damages sustained by Clay, Defendants' profits, and the costs of the action, together with Clay's attorney fees, or in the alternative, damages in such sum as the Court may find to be just according to the circumstances of the case.

**<u>SECOND CAUSE OF ACTION</u>**
**(Trademark Infringement - 15 U.S.C. 1125(a))**

72.     Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 70 above, as though fully set forth herein.

73.     Defendants have intentionally violated 15 U.S.C. 1125(a) in that they have, on or in connection with Defendants' goods or services, used an imitation of the Trademark which represents a false designation of origin, false or misleading description, and/or a misrepresentation of fact likely to cause confusion, mistake, or deceive as to the affiliation, connection, or association of Defendants with Clay or which is likely to cause confusion, mistake or deceive as to whether Clay has anything to do with the origin, sponsorship, or approval of the goods, services, or commercial activities of Defendants.

74.     Defendants have similarly violated 15 U.S.C. 1125(a) intentionally in that their commercial advertising or promotion using an imitation of the Trademark misrepresents the nature, characteristics, qualities, and/or geographic origin of their goods, services, or commercial activities.

75.     Clay is entitled to injunctive relief under 15 U.S.C. 1116 and recovery of damages from Defendants jointly and severally, pursuant to 15 U.S.C. 1117. Damages include, the actual damages sustained by Clay, the Defendants' profits, and the costs of the action together with Clay's reasonable attorney fees. In the alternative, Clay is entitled to recover damages in such sums as the Court may find just according to the circumstances of the case.

## THIRD CAUSE OF ACTION
### (Trademark Infringement - 15 U.S.C. 1125(c))

76.     Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 74 above, as though fully set forth herein.

77.     Defendants' use of an imitation of the Trademark has caused and continues to cause dilution of the distinctive quality of the Trademark. Defendants use of an imitation of the Trademark is a violation of 15 U.S.C. 1125(c), the Trademark being distinctive and famous within the meaning of the statute and Defendants' use of and imitation of the Trademark in commerce having begun after the Trademark became distinctive and famous.

78.     Defendants willfully intended to trade on Clay's reputation and/or cause dilution of the Trademark by their use of an imitation of the Trademark.

79.     Clay is entitled to injunctive relief under 15 U.S.C. 1116 and recovery of damages from Defendants jointly and severally, pursuant to 15 U.S.C. 1117(a). Damages recoverable are actual damages sustained by Clay, the Defendants' profits, and the costs of the action together with Clay's reasonable attorney fees. In the alternative, Clay is entitled to recover damages in such sum as the Court may find just according to the circumstances of the case.

## FOURTH CAUSE OF ACTION
### (Trade Dress Infringement – 15 U.S.C. 1125(a))

80.     Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 78 above, as though fully set forth herein.

81.     Clay is entitled to legal protection of the Card's trade dress under 15 U.S.C. 1125(a), which trade dress includes without limitation a distinctive design that features a foldable card, with distinct headings and colors.

82.     The Card's trade dress has acquired secondary meaning as consumers have come to recognize Clay as the source of the Card.

83.     Defendants' counterfeit version of the Card is such that the consuming public has been confused and will continue to be confused as to the source or origin of Defendants' goods and services and will erroneously believe that they came from Clay.

84.     In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the Card legitimately sold by Clay and Defendants' counterfeit version are substantially the same and the resemblance is such so as to deceive an ordinary observer, inducing an ordinary observer to purchase Defendants' version of the Card believing it to be Clay's.

85.     Defendants' copying of the Card is intentional.

86.     Defendants' version of the Card is nearly identical to Clay's.

87.     Defendants' acts of trade dress infringement have caused and continue to cause damages and injury to Clay.

88.     Clay may recover for his damages an award to compensate him for injuries and damages he has sustained as a result of Defendants' conduct which violates 15 U.S.C. 1125(a).

89.     Because Defendants' acts are intentional, willful, and/or deliberate, Clay is entitled to an award of treble damages.

90.     Clay is entitled to an award of pre-judgment interest for the damages sustained as a result of Defendants' wrongful conduct.

91.     Defendants' wrongful, malicious, fraudulent, deliberate, willful, and/or intentional conduct makes this an exceptional case entitling Clay to an award of attorney's fees and costs.

92.     Clay has no adequate remedy at law. Clay has suffered and continues to suffer irreparable harm as a result of Defendants' acts, and is therefore entitled to permanent injunctive relief to enjoin Defendants' wrongful conduct.

**FIFTH CAUSE OF ACTION**
**(Federal Unfair Competition, False Designation of Origin, Passing Off, and False Advertising – 15 U.S.C. 1125(a))**

93.     Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 91 above, as though fully set forth herein.

94.     The unauthorized use by Defendants of the Card's trade dress through the sale of Defendants' counterfeit version, is likely to cause the public to mistakenly believe that Defendants' products originate from, are endorsed by, or are in some way affiliated with Clay and thus constitute unfair competition, false designation of origin, and passing off.

95.     In addition, the Card is likely to lose its significance as an indicator of origin if Defendants are allowed to continue their infringement.

96.     Defendants have used the Card's trade dress in connection with false and misleading descriptions or representations of fact in promoting Defendants' counterfeit version, thereby misrepresenting the nature, characteristics, source, and qualities of their goods, services or commercial activities.

97.     Defendants' actions are thus in violation of 15 U.S.C. 1125(a).

98.     As set forth above, on information and belief, Defendants' misconduct is part of a deliberate plan to trade off the valuable goodwill established by Clay and has been carried out in willful disregard of Clay's rights and thereby constitutes a violation of 15 U.S.C. 1125(a).

99.     Because Defendants' acts are intentional, willful, and/or deliberate, Clay is entitled to an award of treble damages.

100.    Clay is entitled to an award of pre-judgment interest for the damages sustained as a result of Defendants' wrongful conduct.

101.    Defendants' wrongful, malicious, fraudulent, deliberate, willful, and/or intentional conduct makes this an exceptional case entitling Clay to an award of attorney's fees and costs.

102.    Clay has no adequate remedy at law. He has suffered and continues to suffer irreparable harm as a result of Defendants' acts and is therefore entitled to permanent injunctive relief to enjoin Defendants' wrongful conduct.

**SIXTH CAUSE OF ACTION**
**(Common Law Unfair Competition, Misappropriation, and Trade Dress Infringement - Unfair Practices Act, Utah Code Ann. § 13-5-1 et seq.)**

103.    Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 101 above, as though fully set forth herein.

104.    By their aforesaid conduct, calculated to increase business and profits by deceiving and confusing members of the public, Defendants continue to misappropriate the valuable goodwill of the Card's trade dress, to infringe Clay's rights therein, and unfairly compete with Clay under the common laws of Utah.

105.    Defendant's use of the Card's trade dress to promote, mark, or sell products constitutes an unfair practice under Utah Code Ann. § 13-5-1 et seq.

106.    Defendant's use of the Card's is an unfair or deceptive method of competition occurring in trade or commerce that impacts the public interest and has caused, and is causing, injury to Clay and consumers.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**

107.    Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 105 above, as though fully set forth herein.

108.    The Agreement is a valid enforceable contract.

109.    In the Agreement, Gregory agreed to "transfer all ownership, title and interest of the Starving Student Card in it's [sic.] entirety" which included the Purchased Assets

110.    Clay agreed to pay $10,000.00 for the Purchased Assets.

111.    In the Agreement, Gregory acknowledged that he received the $10,000.00 from Clay on November 14, 2016.

112.    Clay has performed his obligations under the Agreement.

113.    Gregory has refused to cooperate with Clay in the recording of the transfer of the Trademark with the USPTO.

114.    Gregory has refused to transfer the URL to Clay.

115.    Gregory is therefore in breach of the Agreement.

116.    Gregory's breach of the Agreement is material.

117.    Gregory's purpose in breaching the Agreement has been to injure Clay and ruin his business operations.

118.    Clay has suffered damages as a result of Gregory's breach.

### EIGHTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

119.    Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 117 above, as though fully set forth herein.

120.    Every contract includes an implied covenant of good faith and fair dealing, which requires the parties to not intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the contract.

121.    Gregory has breached the implied covenant included in the Agreement.

122.    Gregory has intentionally refused to perform under the Agreement in order to injure Clay.

123.    Gregory has breached the implied covenant by continuing to use the Trademark without authorization.

124.    Gregory has breached the implied covenant by misrepresenting to third parties that Clay has committed fraud.

125.    Gregory has breached the implied covenant by misrepresenting to third parties that he has the rights to the Trademark.

126.    Gregory has breached the implied covenant by inducing third parties to not do business with Clay.

127.    As a result of Gregory's breach of the implied covenant of good faith and fair dealing, Clay has been damaged.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

128.    Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 126 above, as though fully set forth herein.

129.    Clay conferred a benefit on Gregory by transferring $10,000.00 to the latter.

130.    Although Gregory received the $10,000.00 from Clay, he did not transfer the URL or Trademark to Clay.

131.    Clay further conferred a benefit on Gregory by providing him with 6,000 copies of the Card to sell in Utah County.

132.    Gregory has sold versions of the Card that he received from Clay and did not share the proceeds with Clay.

133.    Clay conferred a benefit on Gregory by uploading deals to the App.

134.    Gregory and then sold subscriptions of the App and did not share the proceeds with Clay.

135.     Gregory solicited from Clay these benefits which he received.  Therefore, Gregory has knowledge of the benefits he received from Clay.

136.     Based on these circumstances, it would be unjust for Gregory to retain these benefits without compensation to Clay.

## TENTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations)

137.     Clay re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 135 above, as though fully set forth herein.

138.     Defendants have intentionally made false statements about Clay to individuals and entities with whom Clay has had a business relationship.

139.     Defendants have misrepresented to the third parties that Clay has committed fraud.

140.     Defendants have intentionally misrepresented to third parties that Defendants have the rights to the Trademark.

141.     Gregory deliberately breached the Agreement with the immediate purpose to injure Clay rather than to obtain relief from his obligations under the Agreement.

142.     Gregory's breach of the Agreement has had a ruinous effect on Clay's business and the damages to Clay are not compensable merely by contract damages.

143.     Defendants misrepresentations and defamatory comments, and Gregory's deliberate breach of the Agreement with the purpose of injuring Clay, are improper means by which Defendants have interfered with Clay's economic relationships.

144.     Defendants intentional interference by improper means has caused Clay to lose business.

## PRAYER FOR RELIEF

WHEREFORE, Clay prays for judgment and relief as follows:

A.      An entry of judgment holding that Clay is the rightful owner of the Trademark and that Defendants have and are infringing the Trademark;

B.      A preliminary and permanent injunction against Defendants and their employees, agents, servants, attorneys, instrumentalities, and/or those in privity with Defendants, from infringing the Trademark and the Card's trade dress, or inducing the infringement of the Trademark and the Card's trade dress, and for all further and proper injunctive relief pursuant to 15 U.S.C. 1116 and 1117;

C.      A preliminary and permanent injunction against Defendants and their employees, agents, servants, attorneys, instrumentalities, and/or those in privity with Defendants, from producing, causing to be produced, selling, or otherwise distributing counterfeit versions of the Card.

D.      An award to Clay of such past damages, not less than a reasonable royalty, as he shall prove at trial against Defendants that is adequate to fully compensate Clay for Defendants' infringement of the Trademark;

E.      A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against them be increased up to treble on this basis or for any other basis in accordance with the law;

F.      A finding that this case is "exceptional" and an award to Clay of his costs and reasonable attorney fees;

G.      An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the Trademark;

H.      An accounting of all sales of the Card by Defendants since November 14, 2016;

I.      An order requiring specific performance by Gregory that he execute all documents as are reasonably necessary to transfer the Trademark and URL to Clay.

J.      An award to Clay of monetary damages on the claims above as he shall prove at trial against Defendants; and

K.      Such further and other relief as the Court may deem proper and just.

                              Respectfully submitted,

                                    /s/ Jared G. Brande
Dated: September 21, 2018.        By: _____
                                  Robert A. Gurr (State Bar No. 13722)
                                  Jared G. Brande (State Bar No. 11514)
                                  GURR BRANDE & SPENDLOVE, PLLC
                                  491 E. Riverside Dr., Suite 4B
                                  St. George, UT 84790
                                  Telephone: 435-634-8854
                                  Facsimile: 866-232-8818
                                  rob@gurrbrande.com, jared@gurrbrande.com

                                  *Attorneys for Plaintiff*,
                                  DAVID CLAY